IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MG FREESITES LTD., <br><br> Plaintiff, <br><br> vs. <br><br> SCORPCAST LLC, d/b/a HaulStars, <br><br> Defendant. <br> ------------------------------------------------------- <br> SCORPCAST LLC, d/b/a HaulStars, <br><br> Plaintiff, <br><br> vs. <br><br> MG FREESITES LTD., et al., <br><br> Defendants. | Case No. 20-1012-MFK <br> (lead consolidated case) <br><br><br><br><br><br><br><br> Case No. 21-887-MFK |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

ScorpCast, LLC, which does business under the name HaulStars, has sued MG Freesites, Ltd. and several other related entities (collectively, MG Freesites) for infringement of its patents on video technology.  MG Freesites seeks construction of five claim terms from the asserted patents.  The parties submitted written briefs, and a claim construction hearing was held on February 17, 2023.  This opinion sets forth the Court's construction of the disputed claim terms.

### Background

HaulStars is a corporation that conducts research and development to create

video technologies and "holds a broad variety of patents related to online videos and content delivery systems." Am. Compl. ¶ 24. HaulStars's patented technology "created a tagging feature that enables content creators to tag any item at a specific point in a video." *Id.* ¶ 22. HaulStars initially asserted that MG Freesites infringed the following patents related to this technology: U.S. Patent Nos. 9,965,780 (the '780 Patent); 9,899,063 (the '063 Patent); 8,595,057 (the '057 Patent); 9,703,463 (the '463 Patent); 9,832,519 (the '519 Patent); 10,205,987 (the '987 Patent); 10,354,288 (the '288 Patent); 10,506,278 (the '278 Patent); 10,560,738 (the '738 Patent). *Id.* ¶¶ 22–34.

MG Freesites moved for judgment on the pleadings. The Court granted MG Freesites's motion with respect to the claims of the '780 patent (excluding claims 15 and 25) and the '063 and '519 patents. *See MG Freesites Ltd. v. ScorpCast LLC*, No. 20-1012-MFK, 2023 WL 346301, at *13 (D. Del. Jan. 20, 2023). Familiarity with that decision is assumed.

MG Freesites now seeks construction of five claim terms from five patents. As a result of the Court's decision and rulings by the Patent Trial and Appeal Board (PTAB), HaulStars now asserts claims only from the '463, '987, '278, '738, and '288 patents. The '463, '987, '278, and '738 patents are all related and contain similar specifications. MG Freesites groups these patents into what it calls the first patent family, which covers "[a]n interactive video distribution system and video player" that "display[s] navigation images." *See, e.g.*, '987 Patent Abstract. The '288 patent is part of a second patent family, which describes "a system and method for selecting an artist meeting a certain threshold of votes and apportioning revenue derived from services associated with artist's performance data." '288 Patent at 1:23–26.

2

Although the amended claim construction chart indicated that "the scrubber area" term from the '463 patent was disputed, *see* Am. Chart at 5, the consolidated claim construction brief provided by MG Freesites stated that it was "no longer seeking a construction" of that term, *see* Consol. Br. at ii n.1.  The parties also stated at the claim construction hearing that they had agreed to MG Freesites's proposed construction for the "order of the claim" term.  Thus, only four claim terms are currently disputed.

The Court analyzes the disputed claim terms in the order discussed by the parties in the consolidated claim construction brief and listed by the parties in their joint amended claim construction chart.  Because each disputed phrase has multiple proposed constructions, the Court will not list each one here, but instead will do so at the beginning of the section of the analysis discussing each phrase.  The parties' proposed constructions are taken from the joint amended claim construction chart.

## Discussion

The meaning of patent claims is a question of law for the Court.  *Markman v. Westview Instrs., Inc.*, 517 U.S. 370, 387–88 (1996).  During claim construction, a court construes the words of a claim in accordance with their "ordinary and customary meaning," namely "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc).  When the meaning of a term is "not immediately apparent," a court looks to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence" to determine "what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314 (internal quotation marks omitted).  A court "begin[s] by considering the

3

language of the claims themselves," but claims must also "be read in view of the specification, of which they are a part." *Grace Instrument Indus., LLC v. Chandler Instruments Co., LLC*, 57 F.4th 1001, 1008 (Fed. Cir. 2023) (internal quotation marks omitted). The specification "is the single best guide to the meaning of a disputed term" and "[u]sually . . . is dispositive." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

A.  "Product"

| Claim Terms | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "product" <br><br> '463 Patent, claims 1 & 11 | No construction necessary, plain and ordinary meaning. | "an item sold to and used by a consumer"[1] |

The parties dispute the meaning of the "product" term in claims 1 and 11 of the '463 patent. MG Freesites proposes that "product" should be defined as "an item sold to and used by a consumer," contending that that the specification defined "product" in this manner. Consol. Br. at 3 (quoting '463 Patent at 2:4–5 ("As referred to herein, the term 'product' refers to an item sold to and used by a consumer.")). HaulStars contends that no construction of "product" is necessary and that the specification, when read as a whole, "demonstrates that 'product' was intended to cover both physical items and services." Consol. Br. at 7. Both parties agreed at the claim construction hearing that, consistent with its ordinary and customary meaning, a "product" must be something capable of being sold, rather than something that has been sold. The dispute, therefore, is whether the term "product" can include services. On this point, the Court

---

[1] This is the updated proposed construction that MG Freesites provided during the claim construction hearing. The original proposed construction offered by MG Freesites in the joint amended claim construction chart was "[p]lain meaning, i.e., 'an item sold to and used by a consumer.'" Am. Chart at 6.

agrees with HaulStars and construes "product" to mean both physical items and services capable of being sold and used by a consumer.

This construction is consistent with the patent's specification. Although MG Freesites contends that a particular sentence from the specification defined "product," it divorces this sentence from the remainder of the paragraph. In context, this sentence instructs that "product" is an "item." '463 Patent at 2:4–5. The subsequent sentence explains that "consumable items" refer collectively to "products and services," and that "for all instances of the term 'product,' whether or not the term 'service' appears with such instances of the term 'product,' the description below applies to products and services." *Id.* at 2:7–11. This paragraph, when read as a whole, clearly defines "product" as synonymous with "item" and as including both "products and services." *Id.*

MG Freesites's contention that the second sentence in the paragraph should be read separately from the first as a "space saving measure" that applies only to "embodiments," Consol. Br. at 4, is unpersuasive. Although the specification notes that "[e]mbodiments described herein may be utilized with respect to services sold to a consumer," the specification does not indicate that "product" should have one meaning with respect to the embodiments described in the specification and another with respect to the patent claims. Rather, the "claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315.

MG Freesites also contends that dependent claims 2, 3, 12, and 13 of the '463 patent illustrate the patent's distinction between items and products because "[i]f the term 'product' meant both products and services," the claims using the term "item" "would be superfluous and unnecessary." Consol. Br. at 5; *compare* '463 Patent at

5

51:14–25 ("a plurality of product reviews") and *id.* at 52:46–55 (same) *with id.* at 51:26–32 ("a plurality of item reviews") and *id.* at 52:56–62 (same). This claim differentiation argument is unavailing. Although the doctrine of claim differentiation "creates a presumption that each claim in a patent has a different scope[,] it is not a hard and fast rule of construction." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (internal quotation marks omitted). "[A]ny presumption created by the doctrine of claim differentiation will be overcome by a contrary construction dictated by the written description or prosecution history." *Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022) (internal quotation marks omitted).

In this case, any claim differentiation presumption is overcome by the clear definition of "product" dictated by the specification. *See Campbell Soup Co. v. Gamon Plus, Inc.*, No. 20-2322, 2021 WL 3671366, at *5 (Fed. Cir. Aug. 19, 2021) ("When faced with clear and unambiguous language in the specification and a claim differentiation argument, the specification must prevail."); *Seachange*, 413 F.3d at 1369 ("Claims that are written in different words may ultimately cover substantially the same subject matter.") (alterations accepted) (internal quotation marks omitted). Moreover, as MG Freesites acknowledged at the claim construction hearing, the claims "differ in more ways than just their use" of the "product" and "item" terms, so in this situation the claim differentiation presumption "is weak at best." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1371 (Fed. Cir. 2016).

B.   **"Display in accordance with the definition"**

| Claim Terms | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| display: the [first/second] image as an overlay in accordance with the | No construction necessary, plain and ordinary meaning. | Plain meaning, i.e., "display the [first/second] image as an overlay at |

| | | |
|---|---|---|
| definition as to when the [first/second] image is to be displayed when the first video is played back'"<br><br>'278 Patent, claim 1; '987 Patent, claim 1<br><br>"display: the [first/second] image in accordance with the definition as to when the [first/second] image is to be displayed when the first video is played back"<br><br>'987 Patent, claims 20 & 26 | | least when video playback reaches the defined start time or frame number for the [first/second] image during playback of the first video."<br><br>Plain meaning, i.e., "display the [first/second] image at least when video playback reaches the defined start time or frame number for the [first/second] image during playback of the first video." |

The parties dispute the meaning of two similar claim terms in the '987 patent and '278 patent. Both parties agree that the claims require "the image" to be "overlayed at some point in time when the video is played back." Consol. Br. at 10. The claim terms state that the image is displayed "in accordance with the definition." *See, e.g.*, '987 Patent at 57:62–63. Earlier in the claims, a step in the system is to "enable the first user to define, using the scrubber bar and a first control, when the first image is to be displayed as an overlay when the first video is played back." '987 Patent at 57:34–39; *see also* '278 Patent at 57:36–39 ("[R]eceive from the first user, via the scrubber bar and a first control, a definition as to when the first image is to be displayed . . . ."). MG Freesites contends that "in accordance with the definition" requires that the image must be displayed "at least when video playback reaches the defined start time or frame number." Consol. Br. at 10.

It is unclear which term specifically MG Freesites is asking the Court to construe. MG Freesites contends that the dispute concerns the scope of the term "definition." If

7

so, the Court declines to construe the term "definition." The claim language clearly explains what "definition" means by stating that "the first user . . . define[s], using the scrubber bar and a first control, when the first image is to be displayed." '987 Patent at 57:34–39. On that, no further construction is necessary. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) ("Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term.").

      MG Freesites's contentions regarding *when* the image must be displayed suggest that the real dispute is not about the meaning of "definition," but rather the meaning of "in accordance with." If so, the Court construes "in accordance with" to mean "in conformity with," which is the ordinary and customary meaning of the term.

      MG Freesites's contention that the "definition" must be "either a start time" or "a frame number," Consol. Br. at 13, does not concern the scope of the claim term, but rather specific applications of it. This is "a factual question of infringement" that is inappropriate to resolve as a part of claim construction. *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (holding that no construction was necessary for the term "melting" where "the meaning of 'melting' d[id] not appear to have required 'construction,' or to depart from its ordinary meaning," and instead the parties' disputed "the application of the melting step in the accused process"); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims.").

C.     "Content player"

| Claim Terms | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "a content player"<br><br>'987 Patent, claims 1, 20, 26; '278 Patent, claims 1, 19, 25; '738 Patent, claims 1, 18, 24 | No construction necessary, plain and ordinary meaning. | Plain meaning, i.e., "a media player, distinct from a video player, that is capable of playing other types of media in addition to video." |

The parties dispute the meaning of the term "content player" from several claims in the '987, '278, and '738 patents.  MG Freesites proposes that "content player" must be distinct from "video player," as both terms are used in the same claims.  *See* '987 Patent at 57:5–58:6, 59:33–60:32, 61:3–62:9; '278 Patent at 57:5–58:15; '738 Patent at 57:5–58:3.  MG Freesites also contends that because the specifications refer to other kinds of content beyond video content, a "content player" must be capable of playing more than just video.  HaulStars contends that the plain meaning of "content player" is that the player "simply must play content."  Consol. Br. at 23.  To explain the difference between "content player" and "video player," HaulStars argues that the terms are defined by "their location and functionality."  *Id.* at 24.  Specifically, the "content player" is displayed "on the first user terminal" that "enables the first user to define, using the scrubber bar and a first control, when the first image is to be displayed," whereas the "video player" is displayed "on the second user terminal" to "enable the video player to play the first video."  Consol. Br. at 23–24 (quoting '987 Patent at 57:31–60).

MG Freesites's proposed construction is unduly narrow.  *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language.") (internal quotation marks omitted).  There is no

9

evidence from the specifications or claim language that a content player must be capable of playing other types of content in addition to video. Although MG Freesites points to places where the specifications refer to various kinds of content, that does not imply that a "content player" as used in the claim term must be capable of playing multiple types of content. Instead, when the specifications discuss other forms of content, it is often in reference to a video player. *See, e.g.*, '987 Patent at 24:63–64 ("The video player may be linked to and/or displayed embedded within editorial content . . . ."); *id.* at 25:13–15 ("An external website containing a web content may use the web application to embed the video player . . . ."). MG Freesites acknowledges that the patents only provide that "the content player plays back a specific type of content, video." Consol. Br. at 26. Therefore, to the extent "content player" requires construction, the Court construes content player in accordance with its ordinary and customary meaning—namely, a player that plays content.

  To support its proposed construction, MG Freesites relies primarily on the presumption that a "content player" must be distinct from a "video player" because both terms are used in the same claim. *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, [the Court] must presume that the use of these different terms in the claims connotes different meanings."). But the claim language itself already distinguishes the terms by delineating separate functions for the "content player" and the "video player." Whereas the "content player" "enable[s] the first user to define, using the scrubber bar and a first control, when the first image is to be displayed," the "video player" simply must "play the first video." *See* '987 Patent at 57:31–60; '278

Patent at 57:34–58:3.  The presumption is accordingly not a reason to adopt MG Freesites's proposed construction.

### D. "Offline"

| Claim Terms | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| "offline distribution"<br><br>'288 Patent, claim 1 | No construction necessary, plain and ordinary meaning. | Plain meaning, i.e., "non-Internet distribution" |

The parties dispute the meaning of "offline distribution" from claim 1 of the '288 patent.  MG Freesites proposes that "offline distribution" means "non-Internet distribution."  Consol. Br. at 28.  In support of its construction, MG Freesites cites to the specification, prosecution history, and a dictionary definition of "offline."  HaulStars contends that "offline distribution" does not require construction.  HaulStars explains that "[c]onsistent with [c]laim 1," "online" means "a community where users interact with and provide feedback on performance data in order to determine if an artist meets a threshold or condition."  Consol. Br. at 34.  In contrast to "online," HaulStars argues that "offline distribution" means that "the performance data may be submitted outside of the feedback community that determined if the artist met the threshold condition."  Consol. Br. at 35.  Thus, according to HaulStars, "offline distribution" could include distribution over the Internet.  The Court rejects HaulStars's interpretation and construes "offline distribution" to mean non-Internet distribution.

First, HaulStars's argument based on the claim language does not carry the day.  HaulStars points to the "online profile page" element of claim 1, which "provide[s] access to the plurality of media files to one or more user devices over the communication network."  Consol. Br. at 33 (emphasis omitted) (quoting '288 Patent at

11

8:19–21).  HaulStars argues that because "over the communication network" is not limited to the Internet, online is not necessarily synonymous with Internet.  But it is unclear what the distinction is between the "communication network" and Internet, because HaulStars would not agree to either construction at the claim construction hearing.  The claim language is ambiguous and provides little support for HaulStars's interpretation.

Looking next to the specification, it weighs in favor of the Court's construction.  The specification provides numerous "offline" examples that are non-Internet related, such as "face-to-face events," "advertisement in touring or live performance venue," "television shows, plays, and any other type of performance that occur[s] offline," etc.  '288 Patent at 1:33–34, 3:35–40.  Moreover, the specification repeatedly uses "offline" in contrast with "online."  *See id.* at 2:56–58 ("Some aspects of the service may include either offline and online elements, or both."); *id.* at 1:33–34 ("In some cases, online social networking is combined with offline elements such as face-to-face events.").  And the specification in turn uses "online" synonymously with "Internet."  *See id.* at 1:35–38 ("The ability of users to buy products, obtain information from online services is revolutionizing the way business is done.  The importance of the Internet as a tool of electronic commerce cannot be overstated.").

The parties contest how to interpret the examples the specification provides of "offline channels."  *See id.* at 2:28–31, 6:45–49 ("[T]he submitted performance data may be licensed for use by third parties for distribution through offline channels such as cell phones, podcasts, cable television, satellite television, and/or broadcast television.").  The parties dispute whether "cell phones" and "podcasts" were forms of distribution that

12

required an Internet connection at the time of the patent's priority date, October 2006.  It is likely that these devices were not as synonymous with Internet distribution in 2006 as they are today, perhaps weakening HaulStars's argument that the applicant intended these examples to refer to forms of Internet distribution.  That "cell phones" and "podcasts" are paired with examples of television distribution, which HaulStars does not dispute are non-Internet, further suggests that the applicant did not intend "offline channels" to include forms of Internet distribution.  But even assuming HaulStars is correct, one contrary example from the specification is insufficient to rebut the numerous other examples that support construing "offline distribution" to mean non-Internet distribution.

      Moreover, HaulStars's contention that "online" means "a community where users interact with and provide feedback on performance data," Consol. Br. at 34, is unpersuasive because it would essentially read "online" out of the claim.  For example, in the summary of the invention, the specification states that "[t]he community in general is formed from peers and other artists that generally have an interest in the artist's activities of genre but may also comprise users who enjoy participating in an online community where new artist content is plentiful."  '288 Patent at 2:16–20.  HaulStars's definition of "online" would render the term redundant in this summary.

      The Court's construction is further supported by the prosecution history.  For example, during prosecution of the '288 patent's underlying application, the applicant argued that the claim 1 features of "determining that new performance data is received by the server from a first artist; transmitting, using subscription based syndication, an alert to members of the online community regarding the new performance data" were

13

"specifically tied to [I]nternet and computer technology."  Consol. Br. Ex. E at 11.  "[A]n applicant's repeated and consistent remarks during prosecution can define a claim term by demonstrating how the inventor understood the invention."  *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020).

      HaulStars's competing interpretation of the prosecution history is unpersuasive.  HaulStars contends that the applicant's remarks during prosecution "are consistent" with its interpretation of "online" because the applicant stated that system "provid[es] access to video content in a network-based environment via an alternate system" and that "online views 'would not exist outside of a video distribution network.'"  Consol. Br. at 35 (quoting Consol. Br. Ex. D at 11–12).  But HaulStars does not address the applicant's statements that, as MG Freesites contends, define "online" to mean "Internet," including the remainder of the sentence that HaulStars itself quotes from.  *See* Consol. Br. Ex. D. at 12 ("[I]n this application, the claimed invention addresses the *Internet-centric* challenge of providing access to video content in a network-based environment via an alternate system.") (emphasis added).

      Lastly, MG Freesites cites to the Microsoft Computer Dictionary definition of "offline."  The second of three definitions states that "offline," "[i]n reference to one or more computers," means "being disconnected from a network."  Consol. Br. Ex. F at 375.[2]  Although extrinsic evidence, such as a dictionary definition, "is less significant than the intrinsic record in determining the legally operative meaning of claim language,"

---

[2] Although the dictionary contains other definitions, the quoted definition would be the one most applicable in this case.  The dictionary notes that this definition applies "[i]n reference to one or more computers," Consol. Br. Ex. F at 375, and claim 1 of the '288 patent explicitly claims "an interface . . . accessible by one or more computers over a network," '288 Patent at 8:3–4.

the Federal Circuit "ha[s] especially noted the help that technical dictionaries may provide to a court to better understand the underlying technology and the way in which one of skill in the art might use the claim terms." *Phillips*, 415 F.3d at 1317–18 (internal quotation marks omitted). HaulStars does not confront the dictionary definition of "offline" that MG Freesites provides. This extrinsic evidence therefore provides further support for the Court's construction of "offline distribution" as non-Internet distribution.

E.   **"Order of the claim"**

In the parties' briefs, MG Freesites proposed a construction of claim 1 of the '288 patent that would require certain steps of the claim to proceed in order. The parties stated at the claim construction hearing that they have agreed to MG Freesites's proposed construction for the "order of the claim" term. Accordingly, the parties agree that claim 1 is to be construed as follows: "1) 'determine if a first predetermined threshold is met . . .'; 2) then 'based . . . on the . . . the first predetermined threshold being met, dynamically generate a first offer of online and offline services;' 3) then 'at least partly in response to acceptance of the first offer online and offline services, enable the provision of the online and offline services.'" Consol. Br. at 35–36.

## Conclusion

The disputed claim terms are construed in accordance with the conclusions set forth in this Memorandum Opinion and Order.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 22, 2023